**Otto SUMRALL et al., Plaintiffs,**

v.

**RESOLUTE INSURANCE COMPANY, Defendant.**

**Civ. A. No. 3523.**

United States District Court
S. D. Mississippi,
Jackson Division.

April 19, 1967.

Pyles & Tucker and Edward Wright, Jackson, Miss., for plaintiff.

Waller, Pritchard & Fox (William L. Waller), Jackson, Miss., for defendant.

DAN M. RUSSELL, Jr., District Judge.

This is a diversity of citizenship action filed by plaintiffs, Otto Sumrall and wife, Ruth Delores Sumrall, residents of Picayune, Mississippi, against Resolute Insurance Company, a Rhode Island corporation with its principal office in Hartford, Connecticut. Plaintiffs seek damages, both compensatory and punitive, claiming loss of property allegedly caused by the fraudulent acts of Solon W. Britt, Jr., and Leroy Penton as agents of said defendant. As their claim is based on a series of events occurring over a period of some three or four years, it is necessary to set forth the facts, where undisputed, in a chronological sequence.

On March 6, 1959, plaintiffs executed an installment note in the sum of $1317.-90 in favor of Tower Loan Brokers of Picayune, a non-incorporated business owned by Solon W. Britt, Jr., and managed by Leroy Penton, the note being secured by a deed of trust on both real property and personal property, the latter consisting of specifically described furniture. As additional security, the brokers required a fire insurance policy on the furniture in the amount of the loan. Plaintiff Sumrall admitted that he could have secured this insurance from a company other than defendant, but that he applied for defendant's policy on defendant's forms furnished by Tower Loan, was charged a premium as a part of his loan, and that he received defendant's Certificate of Insurance No. IF249467, naming Tower Loan and himself as the assured. Neither Solon W. Britt, Jr., nor Penton was an appointed agent of defendant insurance company, the certificate having been signed by Robert Britt as authorized agent. Robert Britt and Solon W. Britt, Jr., are brothers, but neither was employed by the other, or associated together in business as far as this action is concerned. In the ensuing months, plaintiffs moved several times, and in December 1960, were living in rented property where all of the said furniture was destroyed by fire. Plaintiffs notified Penton, who inspected the damage, told plaintiffs they need make no further payments on their loan, and offered to help the plaintiffs make a claim under the policy. That he did so is evidenced by a copy of a letter dated June 13, 1961, which reads as follows:

"I have written you twice concerning the above named claimed (sic) which we filed with you approximately 6 months ago, and have received no confirmation whatsoever. I have contacted your adjuster, the Crawford Co. Insurance Adjusters, and talked with Mr. Jack L. Holmes, and he tells me that he is waiting for Mr. Otto Sumrall to give him proof showing the price for the furniture which was destroyed by fire and which was covered by the above numbered Installment Floater Policy.

Certainly I believe that we have waited more than a reasonable time for this settlement, and if nothing is done within the next ten days, I will be forced to turn this matter over to our attorney for settlement."

On June 21, 1961, Crawford & Company, adjusters to whom the claim had been referred by defendant, wrote R. E. Steen, a Picayune attorney, now deceased, who had been employed by

plaintiffs to handle their claim, offering the sum of $550.37 in settlement of the fire loss,[1] this figure being the exact balance then owed by plaintiffs on their note to Tower Loan. Plaintiffs refused this offer, and in October 1961, at the request of Tower Loan, Tate Thigpen, trustee named in plaintiffs' deed of trust, who was also attorney for Tower Loan, instituted foreclosure proceedings against the remaining security consisting of the real property. Prior to a foreclosure sale, plaintiffs, through Steen, sued the trustee, Solon W. Britt, Jr. and the defendant here in the Chancery Court of Pearl River County, Mississippi, the last named being joined on the issue of the amount of fire loss, and which suit resulted in a temporary injunction restraining the sale. All parties were then represented by counsel, the plaintiffs by Steen, Tower Loan Brokers by Thigpen, and the defendant by Morse & Smith of Poplarville, Mississippi. Matters rocked along, the plaintiffs making no payments on their indebtedness to Tower Loan, and the trustee being under a restraining order, until May 20, 1963, at which time a decree was entered in the Chancery Court dismissing the cause on the grounds that it had been compromised and settled. Defendant issued its combination draft and release, dated May 27, 1963, in the sum of $800.00, payable to Tower Loan Brokers and Otto Sumrall, the named assured on defendants' certificate of insurance. Just exactly where this draft remained until July 12, 1963, when plaintiffs admit they went to Steen's office and endorsed same, and at which time plaintiffs admit Steen advised them its acceptance was a full release against defendant, was not apparent from the evidence. Steen could undoubtedly have thrown light on this mystery and other transactions, but he died in November 1963, and of course, his testimony was unavailable. To re-track in order to pick up the sequence, plaintiffs stated they checked often with Steen as to the status of their claim, and admitted that on June 15, 1963, they borrowed $500.00 from Steen, giving him a 90 day note and deed of trust on the property mortgaged to Tower Loan. They denied giving Steen a warranty deed to this property. Steen's check in the sum of $500.00 endorsed by plaintiffs, their note, their deed of trust, and their warranty deed conveying the property to Steen, were identified by Steen's secretary, who, along with the notary public, an employee of the Bank of Picayune, verified that plaintiffs did indeed execute the instruments of conveyance. On June 17, 1963, Thigpen, the trustee, again initiated foreclosure proceedings. On July 15, 1963, he executed a trustee's deed conveying the property to Maxine Jenkins Walker, Steen's secretary. She testified that she had no real interest in the sale, but as to it and other events was merely carrying out the instructions of Steen. Thigpen did not recall delivering defendant's $800.00 draft to Thigpen, nor did Thigpen recall how it arrived at Thigpen's office but was positive that it did arrive following the foreclosure on July 15, 1963. Penton testified that he was called to Thigpen's office on July 19 at which time he endorsed the draft for Tower Loan. The reverse side of the draft indicates that it was negotiated on July 19 at the First National Bank of Picayune. On the following day, July 20, 1963, Thigpen disbursed his special account checks in the sum of $5.00 to R. E. Steen for recording fee, $197.10 to R. E. Steen for Otto Sumrall account, which check was endorsed by both Steen and Sumrall, plaintiff admitting that he received this amount, and on July 22, 1963, the sum of $550.00 to Tower Loan Brokers in payment of the balance of plaintiffs' debt to said brokers. The remainder was applied to publication costs of the sale.

On October 17, 1963, Steen's secretary executed a quit claim deed, conveying the property for the stated consideration of

---

1. The certificate under Special Conditions, Item 3, provides in part: "This company shall not be liable for more than the actual cash value of the property at the time any loss or damage occurs, * * *."

$800.00 to one Mrs. Blackwell, who in November 1963, evicted the tenants on the property and razed the residence thereon. Plaintiffs claim as their losses the face amount of the fire insurance policy, the sum of $7500.00 as the market value of the real property lost at the foreclosure, the value of personal property in the sum of $300.00 left in the residence thereon, lost rent in the sum of $150.00 by reason of the tenant eviction, lost wages in the sum of $600.00 of plaintiff Sumrall in leaving work to consult with his attorney, attorney fees in the sum of $1500.00, and $10,000.00 punitive damages.

Plaintiffs contend they would never have accepted the ultimate settlement with defendant for the fire loss except for being advised that it was the only way to prevent the second foreclosure. This advice came from a Hattiesburg attorney whom they hurriedly consulted after the published notices of foreclosure had begun, and who it is doubtful was completely informed of plaintiffs' transactions with their own attorney, Steen.

The theory of the present suit is that Britt and Penton, as owner and manager, respectively of Tower Loan Brokers, acted as agents for defendant, both by operation of law, and within the purview of Section 5706 of the Mississippi Code of 1942, Revised, which reads as follows:

"Every person who solicits insurance on behalf of any insurance company, or who takes or transmits, other than for himself, an application for insurance, or a policy of insurance, or who advertises or otherwise gives notice that he will receive or transmit the same, or who shall receive or deliver a policy of insurance of any such company, or who shall examine or inspect any risk, or receive, collect or transmit any premium of insurance, or make or forward a diagram of any building, or do or perform any other act or thing in the making or consummation of any contract of insurance, for or with any such insurance company, other than for himself, or who shall examine into or adjust or aid in adjusting any loss for or on behalf of any such insurance

company, whether any of such acts shall be done at the instance, or request, or by the employment of the insurance company, or of, or by any broker or other person, shall be held to be the agent of the company for which the act is done or the risk is taken as to all the duties and liabilities imposed by law, whatever conditions or stipulations may be contained in the policy or contract; such person knowingly procuring by fraudulent representations, payment, or the obligation for the payment, of a premium of insurance, shall be punished by a fine of not less than one hundred dollars nor more than five hundred dollars, or be imprisoned for not more than one year."

Plaintiffs contend this agency began with the issuance of the insurance certificate and continued throughout the events chronicled above. Unfortunate as was the loss of their property, the real value of which was vigorously disputed, it nonetheless is clear to me that plaintiffs wholly failed to meet their burden of proof. Assuming for the benefit of plaintiffs, that Penton, in furnishing the application for defendant's insurance certificate and undertaking to assist plaintiffs in the settlement of their claim, was acting in a dual capacity, which finding I do not explicitly make, it is equally clear that Penton was acting for plaintiffs as well as for his loan company, and, upon plaintiffs' refusal of the adjuster's offer of settlement, no longer were either Solon Britt, Jr., or Penton acting on behalf of defendant, nor could such be so implied. The matter came to rest in the hands of lawyers, plaintiffs' interests with Steen, Tower Loan's interests with Thigpen, and defendant's interests with Morse and Smith who made defendant's settlement with both plaintiffs and Tower Loan. The circumstances surrounding the second foreclosure were too remote to be imputed to or attributed to Britt or Penton as agents of defendant, nor were plaintiffs able to offer any convincing proof to this effect. That persuasion was applied for plaintiffs to accept defendant's settlement for the fire loss may

have been true, but the persuasion, if any, occurred in the office of plaintiffs' attorney on or before the date plaintiffs endorsed defendant's draft in complete release of fire loss claims, and prior to the date of the second foreclosure, of which plaintiffs' attorney had full knowledge.

Accordingly, I find that this cause should be dismissed at the costs of the plaintiff.

Please prepare an appropriate order.